**SINKS et, Plaintiffs, v. HYDEMAN, Defendant.**

Municipal Court, Piqua.

No. 5420.

C. Hubert Lynch, Piqua, for plaintiff.
S. R. Turner, Piqua, for defendant.

## OPINION

By CROMER, J.

The essential part of the petition which is drawn under the Housing and Rent Act, and which asks for a refunder of the excess rental and triple damages and attorney fees, is as follows:

"Plaintiffs admit that during said period (from May 8, 1948 to April 1, 1949) up until April 1, 1949, said premises were decontrolled; **however,** from and after April 1, 1949, defendant charged, received and collected from said plaintiffs, the sum of Twenty-one ($21.00) Dollars per week until May 7, 1948;

during all of which time the **Maximum rent was exceeded.**" (Emphasis ours.)

The maximum rent for the "housing accommodation is stated to have been Forty-five ($45.00) Dollars per month."

To the above petition, the defendant has filed a general demurrer which attacks the legal sufficiency of the petition.

The demurrer admits the well-pleaded allegations of the petition and goes to the substance rather than to the form of the petition.

The defect, if any, must appear upon the face of the petition in order for the demurrer to be sustained. "**Sec. 11309 GC, Causes of Demurrer to petition.** The defendant may demur to the petition **only** when it appears on its face either. (10) That the petition does not state facts which show a cause of action."

Does the defect appear upon the fact of the petition? Perhaps, too much was said by the plaintiffs in alleging "Plaintiffs admit." It may have been unnecessary to state anything about the premises being "de-controlled." We are **only concerned** here with "controlled" premises. The use of the word "however" is not recommended but under the rule of liberal construction of a pleading, and in the absence of a motion, or motions raising objection, the petition does seem, in substance, to state a cause of action, when it says that "the maximum rental was exceeded." This is a close approach to a legal conclusion, but there are enough facts set forth to convert the allegation into a question of mixed law and fact.

The demurrer attacks the petition, not for what appears upon the face of the petition, but for what **ought to appear** in the petition. The argument goes something like this: Since plaintiffs admit that the premises were de-controlled before April 1, 1949, and nothing being made to appear in the petition, that having been once de-controlled, unless it is shown affirmatively that the premises again become controlled in some manner. The question is asked when, where and why are the premises controlled now? When did the status change?

This is a serious question and very difficult to explain why a transition was made on April 1, 1949 from one condition of decontrol to another condition of control. If there is a change it must have come about by the Act of the Congress amending the amendment to the original Housing and Rent Act.

This explanation is difficult because the approach is not an affirmative one but a negative one—not what is put in the amendment but what is deleted therefrom.

The essential part of the Housing and Rent Act of 1947, as amended, referring to "definitions" Section 202 (Act of the

80th Congress) "Housing Accommodations" is defined in (b) as meaning "any building structure or part thereof—rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming or boarding house accommodations, and other property used for living or dwelling purposes) * * *"

Sec. 202 (c): The term "controlled housing accommodations" means housing accommodations in the defense rental area, **except that it does not include** the following:

"Sec. 202 (c) (3) (B)" or (b) which for any successive twenty-four month period during February 1, 1945 to the date of the enactment of the Housing and Rent Act of 1948, both dates inclusive, **were not rented** (other than to members of the immediate family of the landlord) as housing accommodations."

The above "twenty-four month period" is spoken of and called the "testing period" by those who have the duty of administering the act. We understand that many landlords believed the law was unjust and inequitable. There was a more or less concerted effort among landlords who protested against the law and refused to rent their premises to anyone other than to "members of the immediate family." Such landlords having kept their premises out of the rental market for 24 months between the dates above indicated, by paragraph (B) aforesaid, decontrolled the premises so idled for the period mentioned. This section recognized the situation then existing and for a short time the premises were freed from the rent regulations. The same result was accomplished in the case of owner-occupied premises.

It is to be noticed here that all property in a defense area is controlled presumtively. That is, control is the rule and decontrol is the exception. The de-control exists by reason of the exception and by the exception only.

The next step is the enactment of an amendment to the amendment by the 81st Congress. Looking at the title "Definitions" and Section 202 (c) (3) you will see that (B), which referred to the 24 month period, no longer appears as an exception. You will notice that (c) reads as it did in the prior act (80th Congress). Hence, the 24 month clause having been deleted by the amendment made by the 81st Congress, the word "except" in Section 202 (c) no longer has (B) upon which to operate as an exception.

Therefore, in a negative manner, we believe that the property once de-controlled has been brought again under rent regulation.

The demurrer is, therefore, overruled and the defendant ordered to answer in one week. Exceptions are to be noted.